# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOE DON SHERROD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-09-727-F |
| | ) | |
| EVERETTE VAN HOESEN, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

Plaintiff is proceeding *pro se* and *in forma pauperis* in this action brought pursuant to 42 U.S.C. § 1983. Plaintiff seeks redress for alleged violations of his civil and constitutional rights. Plaintiff filed an Amended Complaint on August 21, 2009, naming only one defendant, Everette Van Hoesen, Sheriff of Kay County, Oklahoma. He filed a Brief in Support of Civil Rights Complaint [Doc. #10] (Plaintiff's Brief) the same day.

Three motions are currently pending: (1) Plaintiff's Motion for Appointment of Counsel [Doc. #26] to which Defendant has responded [Doc. #31]; (2) Plaintiff's Motion for Class Action Status [Doc. #30] to which Defendant has responded [Doc. #32]; and Defendant's Motion for Summary Judgment [Doc. #38]. Plaintiff has been given the opportunity to respond to Defendant's Motion for Summary Judgment, *see* Order [Doc. # 39], but has failed to do so within the allotted time.[1] Defendant has also filed a Special Report. [Doc. #21] pursuant to this Court's order. For the reasons set forth below, it is

---

[1] When mailed to Plaintiff at the address provided in the Amended Complaint, the Kay County Detention Center, the order was returned to the Clerk of Court as "undeliverable." *See* Doc. # 40. It appears, therefore, that Plaintiff is no longer incarcerated at the KCDC. Plaintiff has not, however, filed a notice of change of address with the Court.

recommended that Plaintiff's Motion for Appointment of Counsel and Motion for Class Action Status be denied. It is further recommended that Defendant's Motion for Summary Judgment be granted.

## I.     Factual Background / Plaintiff's Claims

At the time Plaintiff filed his Complaint, he was confined at the Kay County Detention Center (KCDC). Plaintiff states that he was a pretrial detainee at the time the incidents about which he complains occurred. *See* Plaintiff's Brief at 2.[2]

In Count I, Plaintiff alleges he was subject to cruel and unusual punishment in that he was denied medication for his high blood pressure and for his mental problems. He further complains that he was charged for "alternate medications" and a visit from the facility's nurse and that money was deducted from his prison account. He further contends that the facility's failure to provide mental health care constitutes a "form of cruel and unusual punishment." Plaintiff's Brief at 2-3.

In Count II, Plaintiff alleges his constitutional rights to have access to the courts and to have due process in disciplinary proceedings have been violated. This claim is based on

---

[2]The Special Report states that Plaintiff was "booked into the KCDC on April 9, 2009, after being extradited from Arizona." Special Report at 2. The Inmate Booking Summary states that Plaintiff was charged with "Bond Violation" and "Obtaining Property by Bogus." Special Report Exhibit 1.

Defendant's alleged failure to provide "any type of disciplinary hearing prior to imposing punishment of a misconduct or alleged misconduct of an inmate."[3] Plaintiff's Brief at 4.

In Count III, Plaintiff contends his right to be free from cruel and unusual punishment has been violated by a litany of alleged constitutional violations which fall under the category of Defendant's failure to provide a "safe, sanitary and healthy place in which to house inmates." Plaintiff's Brief at 5. According to Plaintiff, the KCDC is overcrowded, the fire exits are welded shut, the plumbing, ventilation system, and electrical wiring do not meet the standards outlined by jail inspectors, and inmates do not receive a proper diet. Plaintiff's Brief at 5-6.

## II. Plaintiff's Motions

For the following reasons, Plaintiff's Motion for Appointment of Counsel and Motion for Order of Class Action should be denied.

### A. Motion for Appointment of Counsel

District courts are granted broad discretion with regard to the decision to request an attorney to represent an indigent litigant in a civil proceeding. *See Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991); 28 U.S.C. § 1915(e)(1). In exercising this discretion, the Court must consider a number of factors, including: (1) the merits of the litigant's claim, (2) the nature of the factual issues involved, (3) the litigant's ability to present the claims and (4)

---

[3]Plaintiff does not state that he has been subject to punishment for a misconduct.

the complexity of the legal issues raised. *Rucks v. Boergermann*, 57 F.3d 978 (10th Cir. 1995).

The Court has considered the factors and circumstances of Plaintiff's case bearing on the need for counsel. Based on this review, the Court determines that Plaintiff's Motion for Appointment of Counsel should be denied. The issues in this case are not complex and the factual allegations are straightforward. Although Plaintiff has failed to respond to Defendant's Motion for Summary Judgment, Plaintiff has otherwise proven his ability to adequately present his claims. As discussed in further detail below, Plaintiff's claims are either without merit or subject to dismissal for failure to exhaust administrative remedies.

Plaintiff's Motion for Appointment of Counsel should, therefore, be denied.

**B.     Motion for Class Action Status**

Plaintiff has moved this Court for an order certifying his case as a class action. The motion should be denied. Plaintiff asserts three claims: (1) that Plaintiff has been deprived of medical care; (2) that he has been denied due process and access to the courts; and (3) that he has been deprived of proper nutrition and other proper conditions of confinement. Plaintiff states that other inmates of KCDF either have filed lawsuits similar to his or plan to do so. In support of that assertion, Plaintiff has filed a "Notice of Related or Companion Cases" [Doc. #27] identifying four other inmates who he says have filed cases and three others who are planning to file similar cases.

Plaintiff has not met the prerequisites for class certification under Rule 23(a) of the Federal Rules of Civil Procedure.[4]  First, the claims asserted in the Amended Complaint are individualized claims of constitutional violations for which Plaintiff seeks "an order by the Court instructing Defendant cure all deficiencies/violations" as well as monetary damages. Only in his Motion for Class Action Status does Plaintiff assert in conclusory terms that there exists a "class" of inmates – mainly, two other inmates who have pending cases in this Court, two inmates who may have pending cases and three others who are considering filing cases.  Plaintiff states without specificity that the claims of these other inmates are "similar" to his and, therefore, it would be more efficient for the Court to address them altogether. These conclusory allegations are not sufficient to establish either the numerosity, commonality or typicality prerequisites to class action status.  *See* Fed.R.Civ.P. 23(a)(1), (2) and (3).

Pursuant to Rule 23(a)(4), a party moving for class certification must further show that the representative party can "fairly and adequately protect the interests of the class."

---

[4]Rule 23(a) states:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23 (a)(1)-(4).

Fed.R.Civ.P. 23(a)(4). "Due process requires that the Court 'stringently' apply the competent representation requirement because class members are bound by the judgment (unless they opt out), even though they may not actually be aware of the proceedings." *Lile v. Simmons*, 143 F. Supp.2d 1267, 1277 (D. Kan. 2001) (*quoting Albertson's Inc. v. Amalgamated Sugar Co.*, 503 F.2d 459, 463-64 (10th Cir. 1974)).

Where, as here, class certification is sought by a *pro se* litigant, it is typically denied because a layperson does not have the requisite legal training and expertise necessary to protect the interests of the class. *See, e.g., Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000); *see also Harris v. Correction Management Affiliates, Inc.*, No. 96-6133, 1996 WL 416739 (10th Cir. July 25, 1996) ("Courts are reluctant to certify a class represented by a *pro se* litigant because a layman representing himself is considered 'to be clearly too limited to allow him to risk the rights of others.'") (*quoting Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *Lile v. Simmons*, 143 F. Supp.2d at 1277 (accord) (*citing* 7A Charles A. Wright, *et al.*, *Federal Practice and Procedure* § 1769.1 n.12). By separate motion, Plaintiff has requested that counsel be appointed to represent him. Even if counsel were appointed, however, Plaintiff has not shown that he would be an adequate representative of the proposed class. Plaintiff does not show, or even maintain, that he can adequately fund the notice requirements, discovery and other expenses of a class action, and Plaintiff has not shown that he can adequately communicate with the members of the

6

proposed class. For all of these reasons, Plaintiff has failed to establish that he is an adequate representative of the proposed class.[5]

Since the threshold requirements of Fed.R.Civ.P. 23(a) are not satisfied, Plaintiff's Motion for Class Action Status should be denied.

### III. Defendant's Motion for Summary Judgment

For the reasons set forth below, it is recommended that Defendant's Motion for Summary Judgment be granted.

#### A. Standard of Review for Summary Judgment Motions

Summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). "While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim." *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). Once the movant carries his burden, the nonmoving party must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id.* An issue of material fact is genuine if a reasonable jury could find in favor of the nonmovant. *Id.* "'When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'" *Ross v. The Board of Regents of The University of New Mexico*, 599

---

[5]As indicated above, Plaintiff's *pro se* status is not the only factor hindering the adequacy of his representation of the class.

7

F.3d 1114, 1116-1117 (10th Cir. 2010) (*quoting Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005)).

> B.  **Analysis of Plaintiff's Claims**
>
> 1.  **Count I – Medical and Mental Health Care**

In Count I, Plaintiff states that while he was incarcerated in Arizona, he was prescribed medications for his chronic high blood pressure and mental problems. He states that he was not allowed to have the same medication previously prescribed to him when he arrived at KCDC. Plaintiff further contends that he asked to see a mental health physician, but that he was allowed to see only KCDC's facility nurse. He complains about being charged for the "alternate medications" prescribed to him and for a visit from the facility nurse. He characterizes the deductions from his prison account as being for "mental health care" which he states he did not receive. Finally, he states that Defendant's "failure to provide mental health care to the inmates" confined at KCDC "causes a form of cruel and unusual punishment."

"Under the Fourteenth Amendment due process clause, 'pretrial detainees are . . . entitled to the degree of protection against denial of medical attention which applies to convicted inmates' under the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088-1089 (10th Cir. 2009) (*quoting Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985)). A claim for inadequate medical attention will be successful if the plaintiff shows "'deliberate indifference to serious medical needs.'" *Estate of Hocker v. Walsh*, 22 F.3d

8

995, 998 (10th Cir. 1994) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In *Estelle*, the Supreme Court cautioned that "an inadvertent failure to provide adequate medical care" does not rise to a constitutional violation. *Estelle*, 429 U.S. at 105-06.

"'Deliberate indifference' involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). For the objective component, a "prisoner must first produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A medical need is "sufficiently serious" if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mata* at 751 (internal quotations and citations omitted).

The subjective prong of the deliberate indifference test "requires the plaintiff to present evidence of the prison official's culpable state of mind." *Id.* (*citing Estelle*, 429 U.S. at 106)). The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A prison medical professional who serves "solely . . . as a gatekeeper for other medical personnel capable of treating the condition" may be held liable under the deliberate indifference standard if he "delays or refuses to fulfill that gatekeeper role." *Sealock*, 218 F.3d at 1211; *see also Estelle*, 429 U.S. at 104-105

9

(deliberate indifference is manifested by prison personnel "in intentionally denying or delaying access to medical care").

In this case, Plaintiff has not alleged facts sufficient to satisfy either the objective or subjective prong of the test for deliberate indifference to serious medical needs. First, Plaintiff sues only Sheriff Van Hoesen, and the Amended Complaint is devoid of factual allegations against him either in his supervisory capacity or otherwise. Furthermore, the evidentiary record supports a conclusion that medical personnel at KCDC were quite responsive to Plaintiff's medical needs.

When Plaintiff was booked into KCDC, he stated that he was taking two medications: Klonipin for anxiety and Lisinipril for high blood pressure. The Special Report filed on November 25, 2009, includes a Medication Administration Record that shows the medications administered to Plaintiff. Special Report, Exhibit 3.[6] These records indicate that Plaintiff was receiving his blood pressure medication, Lisinipril, during his incarceration at KCDC. The records also contain notations regarding medications administered to Plaintiff to address his mental health issues. Dr. Cullinan prescribed Vistaril on April 28, 2009. Special Report, Exhibit 4. When Plaintiff requested, on May 24, 2009, that the doctor change his medication from Vistaril to Trazadone, *see* Special Report, Exhibit 5, the doctor prescribed Trazadone on May 28, 2009. Special Report, Exhibits 4, 6. When Plaintiff

---

[6]The Medication Administration Records do not include Plaintiff's name, but they do include the number "19904," the same number that appears on Exhibit 4, "Physician Orders." Exhibit 4 does include Plaintiff's name.

complained on July 17, 2009, that Trazadone was not working and requested a change in medication from Trazadone to Elavil, his medication was changed to Elavil. Special Report, Exhibit 6. On August 18, 2009, Plaintiff requested that Trazadone be prescribed again for him, in addition to the Elavil. Dr. Cullinan declined to add Trazadone because he believed the current levels of medication were sufficient and because Plaintiff had stated just the month before that Trazadone had not helped his mental condition. Special Report, Exhibit 6. As the record indicates, Plaintiff was not deprived of medication or medical services during his incarceration at KCDC. Moreover, the frequent changes in medications – at Plaintiff's request – do not support a conclusion that anyone at KCDC knew of and disregarded an excessive risk to Plaintiff's health or safety. Moreover, a mere disagreement between an inmate and medical providers does not constitute deliberate indifference to serious medical needs. *See Garrett v. Stratman*, 254 F.3d 946, 957 (10th Cir. 2001).

Plaintiff's complaint that he was required to make nominal payments for his medications does not rise to the level of a constitutional violation, as Plaintiff was never denied medical services because of an inability to pay. Defendant states in his Affidavit that "no inmate is denied medical care. Even if an inmate is indigent, he is permitted to see the jail nurse or doctor." Defendant's Motion, Exhibit 1, ¶ 8 (Affidavit of Everette Van Hoesen). *See Cannon v. Mason*, 340 Fed. Appx. 495, 498, 2009 WL 2400272, 3 (10th Cir. Aug. 6, 2009) (no constitutional violation where inmate was not denied medical treatment because of inability to pay) (unpublished op.). Plaintiff has not demonstrated a genuine issue

11

for trial on his claim of deliberate indifference to Plaintiff's medical needs, and therefore Defendant is entitled to summary judgment on the claims in Count I.

### 2. Count II – Access to the Courts; Count III – Conditions of Confinement

In Count II, Plaintiff contends that his right to access the courts and to due process were violated because Defendant has not implemented a policy to govern the disciplinary process for inmates accused of misconduct. He contends that there is no provision for "any type of disciplinary hearing prior to imposing punishment of a misconduct or alleged misconduct of an inmate confined to his facility." Plaintiff's Brief at 4. In Count III, Plaintiff contends that his constitutional rights have been violated by a number of conditions of his confinement in the KCDC. In Defendant's Motion for Summary Judgment, Defendant has raised the affirmative defense that Plaintiff has failed to exhaust his administrative remedies with respect to the issues raised in Counts II and III. Defendant has submitted exhibits to the Court which support his affirmative defense.

Under the Prisoner Litigation Reform Act ("PLRA"), a prisoner must exhaust his administrative remedies prior to filing a lawsuit in federal court regarding prison conditions. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Indeed, "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Because the prison's procedural requirements define the steps necessary for exhaustion, *id.* at 218, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

12

The Special Report submitted by Defendant contains a copy of the handbook given to each inmate upon his incarceration in the KCDC. *See* Special Report, Exhibit 11. The handbook contains the following description of the process for filing a complaint:

> An inmate shall have the right and means to report a complaint to the Facility Officials without fear of being subjected to adverse action for doing so. Inmate must report complaint to the Detention Officer on duty in writing. Complaint form will be delivered, without reading, to the Facility Administrator or his designee. If complaint is valid, the complaint will be forwarded to the Sheriff for processing.
>
> Sheriff may direct an investigation into a valid complaint. A written report and findings and recommendations will be submitted to the Sheriff for review. A copy of the complaint, findings, and action taken will be placed in inmates [sic] file.

Special Report, Exhibit 11 at 8.

The Special Report also contains copies of four documents entitled "Kay County Detentional Facility Inmate Request And/Or Complaint Form" signed by Plaintiff. The first is dated July 16, 2009. Plaintiff states:

> I am on 100 mg Trazadone. It is not doing anything for me. Can you either double my dosage or put me on 100 mg Elivil or Mellowmill [sic]. I am still having mental problems. Will you please see if Edwin Fair[7] will come see me?

Special Report, Exhibit 7.

The second form is dated August 13, 2009. It states:

---

[7]Defendant explains in his Affidavit that "Edwin Fair" is a mental health facility in Ponca City which will provide an evaluation of an inmate's mental condition if the facility doctor or nurse determines that an inmate's mental condition is severe enough to put the inmate himself or others at risk. Defendant's Motion, Exhibit 1 at 2.

13

> Mrs. Liz, I recently switched medication and asked you to put me on Elavil, 100 mg a night. However, my body seems to have built up a tolerance to the dosage. Could you ask the Dr. if we can up the dosage to 200 mg a night? I have serious issues that I am dealing with in my head.
>
> I also request that I be put on Trazadone in the mornings. That would help me deal with my anxiety through the daytime since it doesn't put me to sleep. I thank you for helping me deal with my problems. It helps to know you care.

Special Report, Exhibit 8.

The third form is dated June 4, 2009. Plaintiff states that he was charged $8.00 for medical services for the month of April, but that he had not seen a doctor or received any non-prescription medications during that month. Plaintiff also stated that he had been charged for medical care of his chronic high blood pressure and mental health care. He requested a refund. The response from a staff member explains that Plaintiff was charged $4.00 for each of the two prescription medications, one for high blood pressure and one for anxiety, received during the month of April. Special Report, Exhibit 9.

The final form is dated August 20, 2009. Plaintiff asked "Ms. Liz" to determine why $16.00 was taken from his inmate account. He stated that "Ms. Liz" had said he would not be charged for his last visit to her. The response, apparently from "Ms. Liz," states that the money taken from Plaintiff's account was for monthly medications for the months of June and July, $8.00 each month. Ms. Liz stated that she had not charged Plaintiff for his last visit. Special Report, Exhibit 10.

Consistent with these complaint forms in the Special Report, Defendant's sworn testimony submitted in support of the motion for summary judgment states that Plaintiff's

inmate file contains grievances addressing <u>only</u> his complaints about medical services and amounts deducted from his account for medical services. *See* Defendant's Motion, Exhibit 1, ¶¶ 9, 10, 16 (Affidavit of Everette Van Hoesen). According to Defendant's records, no grievances were submitted relating to his conditions of confinement claims, his access to court claims or his due process claims.

When a defendant moves for summary judgment based on an affirmative defense, such as an inmate's failure to exhaust administrative remedies before filing a civil rights action, the defendant making such a motion must demonstrate that no disputed material fact exists regarding the affirmative defense asserted. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). If the defendant meets this initial burden, the plaintiff must then demonstrate the existence of a disputed material fact. If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law. *Id.* The evidentiary record before the Court shows that Plaintiff has not attempted to exhaust administrative remedies with regard to the issues raised in Counts II and III. Moreover, as discussed above, Plaintiff has not responded to Defendant's dispositive motion and has failed, therefore, to raise a genuine issue of material fact with regard to exhaustion of administrative remedies for the claims raised in Counts II and III. Defendant is, therefore, entitled to summary judgment on Plaintiff's claims raised in Counts II and III.

**RECOMMENDATION**

For the reasons set forth, it is recommended that Plaintiff's Motion for Appointment of Counsel [Doc. #26] and Plaintiff's Motion for Class Action Status [Doc. #30] be denied. It is further recommended that Defendant's Motion for Summary Judgment [Doc. #38] be granted. It is recommended that Defendant be granted summary judgment on the claims raised in Counts I, II and III. Counts II and III, however, should be dismissed without prejudice based on Plaintiff's failure to exhaust his administrative remedies. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (remanding case to the district court with directions to vacate its dismissal only to clarify that the dismissal, based on failure of the Plaintiff to exhaust administrative remedies, is without prejudice).

**NOTICE OF RIGHT TO OBJECT**

The parties are advised of their right to file objections to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of this Court by August __16th__, 2010. *See* Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred in this matter and terminates the referral.

ENTERED this __26th__ day of July, 2010.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE